IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

**EOD**
10/06/2010

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **IRA GLEN RUSHING** | § | |
| xxx-xx-0958 | § | Case No. 04-62036 |
| 11310 CR 3292-D, Garrison, TX 75946 | § | |
| | § | |
| Debtor | § | Chapter 13 |

| | | |
|---|---|---|
| IRA GLEN RUSHING and | § | |
| JACQUELINE Y. BERRY | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adversary No. 10-6010 |
| | § | |
| GREEN TREE SERVICING, LLC | § | |
| and JOHN PATRICK HERR | § | |
| | § | |
| Defendants | § | |

## <u>MEMORANDUM OF DECISION</u>

Before the Court for consideration is a "Motion to Dismiss the Plaintiff's (sic) First Amended Complaint Pursuant to Bankruptcy Rule 7012(b), Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 28 U.S.C. §1334(b), or Alternatively, Abstention in Favor of Arbitration Pursuant to 28 U.S.C. §1334(c)(1) or Alternatively, Stay Pending Arbitration Pursuant to 9 U.S.C. Sections 1-3" filed by one of the two Defendants, Green Tree Servicing, LLC, on June 30, 2010, and an identically-titled motion to dismiss filed on September 10, 2010, by the other Defendant in this action, John Patrick Herr.  The

Plaintiff-Debtor, Ira Glen Rushing (the "Debtor"), and his non-debtor spouse[1], Jacqueline Y. Berry, objected to each particular motion and the parties submitted written briefing on the issues raised therein. Each motion seeks dismissal on the same grounds as to each particular Plaintiff. This memorandum of decision disposes of all issues pending before the Court.[2]

**Factual And Procedural Background**

The basic facts set forth in the Plaintiffs' First Amended Complaint are as follows:

1.    On or about March 19, 2000, Mr. Rushing purchased a 1999 Palm Harbor model 3000E mobile home from Palm Harbor Village. A Retail Installment Contract was executed by the parties.

2.    One of the provisions of that contract read as follows[3]:

> **15.    ARBITRATION:** All disputes, claims, or controversies arising from or relating to this agreement or the relationships which result from this Agreement, or the validity of this arbitration clause or the entire Agreement, shall be resolved by binding arbitration by one arbitrator selected by

---

[1]    The parties dispute whether Ms. Berry is actually married to the Debtor. However, for the purposes of this determination, and notwithstanding the fact that no spouse is referenced in the Debtor's schedules and the fact the Plaintiffs referred to Ms. Berry as the Debtor's "girlfriend" in their original complaint, the Court will accept the allegation contained in the Plaintiffs' amended complaint that Ms. Berry is the Debtor's spouse. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) [directing that, in passing on a Rule 12(b)(6) motion, a court must accept all of the plaintiff's allegations as true].

[2]    This Court has jurisdiction to consider the Motions pursuant to 28 U.S.C. §§1334, §157(a), and §157(c)(1).

[3]    Though normally a court is restricted to pleadings in deciding whether to grant a motion to dismiss, the Fifth Circuit has recognized one limited exception. *Scanlan v. Texas A&M University*, 343 F.3d 533, 536 (5th Cir. 2003) (citations omitted). A court may consider documents attached to a motion to dismiss if the documents are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). The Retail Installment Contract goes to the heart of this matter, was referenced in both the original and amended complaints, and was included in the appendix to Green Tree's initial motion to dismiss.

**-2-**

you with my consent.  This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, Title 9 of the United States Code.  Judgment upon the award rendered may be entered in any court having jurisdiction.  The parties agree and understand that they choose arbitration instead of litigation to resolve disputes.  The parties understand that they have a right or opportunity to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein.  **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN).**  The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this agreement.  I agree that I shall not have the right to participate as a representative or a member of any class of claimants pertaining to any claim arising from or relating to this Agreement.   The parties agree and understand that the arbitrator shall have all powers provided by law and the Agreement.  These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief.   Notwithstanding anything hereunto the contrary, you retain an option to use judicial or non-judicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation or to foreclose on the collateral.  Such judicial relief would take the form of a lawsuit.  The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration in this Agreement, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

3.      After the execution of the contract, Palm Harbor Village immediately assigned its interest in the contract and its lien upon the home, without recourse, to Conseco Finance Servicing Corporation.  Conseco was later renamed Green Tree Servicing, LLP and that entity assumed responsibility for the servicing of the Debtor's promissory note.

4.      In 2004, after the Debtor became delinquent on his monthly payments to Green Tree, he filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on September 27, 2004, with Gordon Mosley serving as the Debtor's attorney.

5.      The original mailing matrix of creditors filed in the case included Green Tree and the Debtor properly scheduled Green Tree as a secured creditor in his schedules that were filed on the petition date.

6.      One day later, a member of Mr. Mosley's office received a phone call from a Joyce Nelson, who identified herself as a representative of Green Tree.  Ms. Nelson called to inquire about the payment owed to Green Tree on Mr. Rushing's home.

7.      During that September 28 phone conversation, Mosley's staff advised the Green Tree representative of the Debtor's Chapter 13 bankruptcy filing, and provided the case number, the filing date, and all contact information for Mosley.

8.      After the bankruptcy case was commenced, Green Tree, acting through state court counsel, Mr. Richard McKinney, filed a lawsuit against the Debtor and Ms. Berry in the 114th Judicial District Court of Smith County, Texas on September 28, 2004, to collect its unpaid indebtedness.

9.      Within three days, on October 1, 2004, Green Tree filed a proof of claim with this Court in the Debtor's case.  Such proof of claim was dated September 28, 2004, the same date that Joyce Nelson from Green Tree had contacted Mr. Mosley's office and was informed of the bankruptcy filing.

10.     The proof of claim identifies Green Tree as a creditor and provided an address to which payments and notices could be sent.  It documents the existence of a pre-petition claim.

11.     It is apparent that, while Green Tree had received notice of the bankruptcy and had filed a proof of claim in the case, it failed to notify its state court counsel of the Debtor's bankruptcy filing or that prosecution of the state court lawsuit should be halted.

-4-

12.    On October 4, 2004, Mr. McKinney, acting on behalf of and for the benefit of Green Tree, obtained an order authorizing service of the state court petition and summons.

13.    When the Debtor notified his attorney, Mosley, that he had been served with a state court petition signed by Mr. McKinney on behalf of Green Tree, Mosley's office contacted McKinney's office by telephone and spoke with an assistant who identified herself as "Cheryl."  Cheryl was given all of the pertinent bankruptcy case information and she was informed that the state court lawsuit was served upon Mr. Rushing in violation of the automatic stay.  Cheryl stated that she would personally provide this information to McKinney.

14.    On October 27, 2004, the Citation Return of Service was returned to the state court.

15.    On November 22, 2004, McKinney, on behalf of Green Tree, filed a Motion for Default Judgment in the state court action.

16.    On November 23, 2004, a default judgment was entered by the state court against the Debtor and Ms. Berry.  On that same date, a notification letter was sent to the judgment defendants informing them of the entry of the default judgment.

17.    On November 29, 2004, Mosley's office contacted McKinney's office regarding the entry of the default judgment.  A representative identifying himself as Jesse Cardenas stated that Cheryl was currently out sick and he would need to review the matter.

18.    On or about December 2, 2004, McKinney filed a motion to withdraw the default judgment. The state court granted that withdrawal on December 15, 2004, but the state court lawsuit itself would not be formally dismissed until February 19, 2007.

19.    On January 12, 2005, acting through a different attorney, Green Tree filed an objection to the confirmation of the Debtor's proposed Chapter 13 plan.

20.    On April 14, 2005, the Court confirmed the Debtor's Chapter 13 plan in which the pre-petition arrearage was to be paid to Green Tree pursuant to its claim, with the Debtor continuing to make post-petition monthly payments directly to Green Tree.

21.    On November 9, 2005, Green Tree filed a Motion for Relief from Automatic Stay, alleging that the Debtor was delinquent in his post-petition direct payments.

22.  The stay motion was resolved by agreement via the entry of an Agreed Order on January 11, 2006 that required the Debtor to: (1) remain current beginning with the February 1, 2006 payment; (2) modify his plan within 30 days to add a $6,126.18 post-petition delinquency to Green Tree; (3) stay current with ongoing payments to the Trustee; and (4) maintain insurance on the home. In the event Mr. Rushing defaulted on any of these provisions, the Agreed Order provided for the termination of the automatic stay as to the home only.

23.  On or about April 7, 2008, Green Tree mailed (but did not file) a Notice of Default to the Debtor, alleging that the stay had terminated pursuant to the Agreed Order because the March 2008 and April 2008 payments had not been tendered.

24.  On May 6, 2008, Mosley contacted Green Tree's bankruptcy attorney regarding the purported default and sent proof to such attorney that the purported missing payment had, in fact, been paid. Later that day, Green Tree's bankruptcy attorney confirmed the receipt of the payments and confirmed that the automatic stay was still in effect.

25.  The enforcement arm of Green Tree was apparently not notified of the rescission of the Notice of Default.

26.  On May 7, 2008, Green Tree sent John Patrick Herr as an agent to the Debtor's property for the purpose of using self-help to repossess the mobile home.

27.  Ms. Berry, who is legally blind, responded to Herr's knock on the door by speaking with him through her home's intercom system. Herr asked to speak with the Debtor and Berry stated that he was not at home. Herr responded that he was there on a very important matter, so Berry opened the door.

28.  When Berry opened the door, Herr stated he was there on behalf of Green Tree and that he was repossessing the home because the Debtor was behind on his payments in the approximate amount of $2,300.00. Berry responded that there must be some mistake, but Herr stated that no mistake had been made and that she must vacate the premises immediately.

29.  Berry immediately contacted the Debtor's bankruptcy attorney, Mr. Mosley, and placed the phone on its speakerphone function. Mosley asked Herr to identify himself. He would only identify himself as "John" and he stated that he was a representative of Green Tree. Mosley informed Herr that he and Green Tree were violating the law, that both were in willful violation of the automatic stay, that the Debtor was not behind in payment, and he demanded that Herr leave the premises immediately.

30.     Herr responded that Green Tree had told him the unit was vacant and that he was unaware of Berry's presence or role in the dispute.

31.     Despite Mosley's reference of the bankruptcy case and of the existence of the automatic stay, Herr insisted that Berry sign and accept a notice from him and immediately vacate the premises.

32.     Berry refused to leave and, during an ensuing argument, Herr forced his way into the home, grabbed Ms. Berry by her left arm and started to pull on her.  She told Herr that he was hurting her and that she was blind and could not sign papers. Herr ultimately pushed Berry down and assaulted her.

33.     After Herr's departure, Berry went to the hospital for injuries to her head, neck and back.  Berry continues to receive treatment for those injuries.

Almost two years later, on April 7, 2010, the Plaintiffs filed their original complaint in this Court, alleging that Green Tree was liable under 11 U.S.C. §362(k) for the automatic stay violations arising from Green Tree's conduct in the Debtor's bankruptcy case.  On June 21, 2010, the Plaintiffs filed a First Amended Complaint, adding John Patrick Herr as a party defendant and asserting his individual liability for his alleged actions against Ms. Berry.

As recited earlier, both Defendants have filed motions to dismiss the First Amended Complaint.  They seek dismissal of the claims brought by the Debtor-Plaintiff, Ira G. Rushing, on the basis that the Retail Installment Contract signed by the Debtor-Plaintiff on or about March 19, 2000 contains an arbitration clause, that the §362(k) claim is subject to the scope of that arbitration provision, and that his adversary complaint should therefore be dismissed.  In the alternative, the Defendants contend that a dismissal is appropriate under the principles of abstention so that an arbitration proceeding can be

-7-

conducted or, at the very least, that this Court should enter a stay against the continued prosecution of the Debtor-Plaintiff's complaint until an arbitration proceeding can be conducted.

The Defendants further seek a dismissal of the claims brought by the non-debtor spouse, Jacqueline Berry, on the grounds that she has no standing to prosecute a complaint for a stay violation under §362(k) because she is neither a debtor nor a creditor of this estate and has no cognizable interest that is protected by the stay violation statute. Therefore, according to the Defendants, this Court has no jurisdiction to consider any complaint that she might wish to pursue against them.

## Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure, as incorporated into bankruptcy adversary proceedings under Federal Rule of Bankruptcy Procedure 7012, provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted.  However, a Rule 12(b)(6) motion cannot be properly granted if a claim  "may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."  *Id*. at 563 n. 8.

The court must accept all well-pleaded facts contained in the plaintiff's complaint as true and view them in the light most favorable to the plaintiff. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions;" "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level," *id.* at 555, and into the "realm of plausible liability." *Id.* at 557 n. 5. As recently clarified by the United States Supreme Court, the *Twombly* standard requires a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The first step is to identify and disregard those allegations that are merely conclusory statements which "are not entitled to the assumption of truth." *Id.* at 1950. Once the well-pleaded (and actual) factual allegations are identified, we "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## Discussion

*Dismissal/Abstention Based upon Arbitration Rights*

The Defendants contend that the Debtor's cause of action under §362(k) is a claim that is subject to the scope of the arbitration provision between the parties and that his prosecution of an adversary complaint in this Court should therefore be dismissed or stayed in order to allow the arbitration process to take place.[4]

There clearly exists a strong federal and state policy favoring arbitration, even when the jurisdiction and judicial power of a federal court has been properly invoked. This is reflected in the text of Federal Arbitration Act[5] and in the jurisprudence arising in

---

[4] The claims asserted by Ms. Berry are not subject to the arbitration provision. She is not a signatory to the Retail Installment Contract with Green Tree and her claims are only tangentially related to that document. It is axiomatic that "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, --- U.S. ---, 130 S.Ct. 2847, 2856, 177 L.Ed.2d 567 (2010). While under very limited circumstances one who is not a signatory or direct party to a contract containing an arbitration clause can at times be bound to such provision as a third party beneficiary through state law principles of contract and agency law, such an extension is narrowly construed and, as Texas courts have recognized, "a presumption exists that parties contracted for themselves unless it clearly appears that they intended a third party to benefit from the contract." *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). No such intention is even remotely suggested in this case.

[5] The FAA provides that:
A written provision in .. a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. §2 (West 1999)

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance

this area.[6] The United States Supreme Court has endorsed several basic principles which

serve as the initial guideposts regarding the arbitrability of disputes in the federal courts:

(1)    is there a contractual agreement to arbitrate?

(2)    in the absence of clear and unmistakable language to the contrary, the arbitrability
        of a dispute is a question of law for the Court to decide;

(3)    any decision regarding arbitration is to be made without reference to the potential
        merits of the underlying claims; and

(4)    there is a presumption in favor of arbitration.

*Smith Barney Shearson, Inc. v. Boone,* 47 F.3d 750, 752 (5th Cir. 1995), cited in *Hydro-*

*Action, Inc. v. Craig (In re Hydro-Action, Inc.),* 266 B.R. 638, 644 (Bankr. E.D. Tex.

2001).[7]   That jurisprudence has now been distilled into a more workable frame of

analysis. As the Fifth Circuit has stated,

> A two-step analysis is employed to determine whether a party may be
> compelled to arbitrate.  First, whether the party has agreed to arbitrate the
> dispute is examined. This question itself is further subdivided; to determine

---

with the terms of the agreement, providing the applicant for the stay is not in default in
proceeding with such arbitration.

9 U.S.C.A. §3 (West 1999).

[6] *See, e.g. Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 89 (2000) [recognizing that
the purpose of the FAA  is "to reverse the longstanding judicial hostility to arbitration agreements...and to
place arbitration agreements upon the same footing as other contracts," *citing Gilmer v.
Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, (1991)]; *In re NEXT Financial Group, Inc.,* 271 S.W.3d
263, 267 (Tex. 2008) ["[W]e are mindful that the scope of an arbitration agreement must be broadly
interpreted in light of the federal policy favoring arbitration. . . .[and] when exceptions to an arbitration
agreement are at issue, we construe the exceptions narrowly in light of the federal policies favoring
arbitration and disfavoring broad interpretations of exceptions, 'lest they overwhelm the rule'"].

[7] These principles are derived from the so-called "Steelworker Trilogy":  *United Steelworkers of
America v. American Mfg. Co.,* 363 U.S. 564 (1960); *United Steelworkers of America v. Warrior & Gulf
Nav. Co.,* 363 U.S. 574 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363
U.S. 593 (1960).

whether the party has agreed to arbitrate a dispute, our court must ask: (1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement.  If both questions are answered in the affirmative, our court then asks whether any federal statute or policy renders the claims nonarbitrable.

*Jones v. Halliburton Co.*, 583 F.3d 228, 233-34 (5th Cir. 2009) (citations and internal quotations omitted).  These determinations are generally based upon state law, but the court must give due regard to the federal and state policies favoring arbitration and construe any ambiguities in favor of arbitration.[8]

Under those standards, there is little doubt that a valid arbitration agreement exists between these parties and that the scope of that provision is broad enough facially to encompass the damage remedies that the Debtor seeks to invoke.  In that March 2000 transaction, the Debtor specifically agreed to submit to arbitration "*[a]ll disputes, claims, or controversies arising from or relating to this agreement or the relationships which result from this Agreement*."  The Debtor's cause of action against these two Defendants would not have arisen in the absence of the underlying debtor-creditor contractual relationship that the Debtor sought to adjust in his bankruptcy case.

Thus, the Defendants have carried their burden of proof as movants to establish

---

[8]  *See, e.g., Volt Info. Sciences, Inc. v. Board of Trustee of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989); *General Motors Corp. v. Pamela Equities Corp*., 146 F.3d 242, 251 (5th Cir. 1998)["The weight of this presumption is heavy: arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue."(internal quotations and citations omitted)].  The same presumption is followed by Texas courts.  *See, e.g., In re NEXT Financial Group, Inc.,* 271 S.W.3d at 267; *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996).

that this dispute is subject to the presumption of mandatory arbitration unless, as the Plaintiffs contend, sufficient grounds to override such a presumption. The only colorable ground presented by the Plaintiffs by which the mandatory reach of the arbitration provision may be avoided is whether the policies undergirding the stay violation provisions of §362(k) inherently conflict with the policies favoring arbitration, thereby rendering that particular type of claim nonarbitrable.[9]

Drawing a clear line of demarcation as to when such an inherent conflict exists is not as easy as it might sound.  In determining whether such a conflict exists, this Court must remain mindful of the liberal federal policy favoring arbitration agreements. However, in *Ins. Co. of N. America v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re National Gypsum Co.)*, 118 F.3d 1056 (5th Cir. 1997), the Fifth Circuit observed that the attempt to discern the existence of such a conflict should begin "by distinguishing between those actions derived from the debtor and those created by the Bankruptcy Code."  *Id.* at 1068.  While the determination of whether a particular dispute is within the core jurisdiction of the bankruptcy court is not unilaterally determinative, the Circuit did observe that:

---

[9]  The Plaintiffs also contend essentially that Green Tree waived its arbitration rights by actively participating in the Debtor's bankruptcy case.  However, "there is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived carries a heavy burden."  *Republic Ins. Co. v. Paico Receivables, LLC*, 383 F.3d. 341, 344 (5th Cir. 2004).  That burden is far from fulfilled under these facts.  The Debtor's invocation of the privilege to adjust the debtor-creditor relationship existing between Green Tree and himself through the bankruptcy process triggered the necessity for Green Tree's participation in the bankruptcy process in order to protect its rights and gain a distribution from the bankruptcy estate that the Debtor voluntarily created.  That legitimate participation cannot now be rightly used against Green Tree under a theory of contractual waiver.

> [T]here can be little dispute that where a core proceeding involves
> adjudication of federal bankruptcy rights *wholly divorced* from inherited
> contractual claims, the importance of the federal bankruptcy forum
> provided by the Code is at its zenith. ... [A]ssuming an otherwise applicable
> arbitration provision, the adjudication of these actions outside the federal
> bankruptcy forum could in many instances present the type of conflict with
> the purpose and provisions of the Bankruptcy Code alluded to in *McMahon*.

*Id*. (emphasis added).   It therefore offered the following course of action:

> We think that, at least where the cause of action at issue is not derivative of
> the pre-petition legal or equitable rights possessed by a debtor but rather is
> derived solely from the federal rights conferred by the Bankruptcy Code, a
> bankruptcy court retains significant discretion to assess whether arbitration
> would be consistent with the purpose of the Code, including the goal of
> centralized resolution of purely bankruptcy issues, the need to protect
> creditors and reorganizing debtors from piecemeal litigation, and the
> undisputed power of a bankruptcy court to enforce its own orders.

*Id*.  Thus, in a bankruptcy context, the assessment of whether an inherent conflict exists

that justifies the non-enforcement of an otherwise applicable arbitration provision "turns

on the underlying nature of the proceeding, i.e., whether the proceeding derives

exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of

the proceeding would conflict with the purposes of the Code."  *Id*. at 1067.

The first hurdle is clearly met in this case.  This complaint alleging stay violations

under §362(k) arises exclusively under the Bankruptcy Code.  In jurisdictional terms, the

Debtor's claim "arises under" the Code and is within the core jurisdiction of the Court.

*Johnson v. Smith (In re Johnson)*, 390 B.R. 414, 417 (B.A.P. 10th Cir. 2008); *In re*

*Spookyworld, Inc.* 266 B.R. 1, 11 (Bankr. D. Mass. 2001); *AHN Homecare, L.L.C. v.*

*Home Health Reimbursement & Health Care Financing Admin. (In re AHN Homecare,*

*L.L.C.)*, 222 B.R. 804, 805 (Bankr. N.D. Tex. 1998).  Such a cause of action does not

exist outside the province of the Bankruptcy Code, *Zimmerli v. Ocwen Loan Servicing,*

*LLC (In re Zimmerli)*, 432 B.R. 238, 242 (Bankr. N.D. Tex. 2010), and is wholly divorced

from the claims arising from the parties' contract.  With the first step satisfied, this Court

must assess whether the Defendants' request for arbitration of the stay violation claim

would conflict with the purposes of the Bankruptcy Code.

The Fifth Circuit has consistently recognized the importance of the automatic stay

to the successful implementation of the bankruptcy process in all chapters and the

necessity for bankruptcy courts to be diligent in their enforcement of its restrictions.

In a seminal case, the Circuit summarized the importance of the automatic stay by noting

this "eloquently stated" passage from the House Report on the adoption of §362:

> The automatic stay is one of the fundamental debtor protections provided
> by the bankruptcy laws. It gives the debtor a breathing spell from his
> creditors. It stops all collection efforts, all harassment, and all foreclosure
> actions. It permits the debtor to attempt a repayment or reorganization plan,
> or simply to be relieved of the financial pressures that drove him into
> bankruptcy.
> The automatic stay also provides creditor protection. Without it, certain
> creditors would be able to pursue their own remedies against the debtor's
> property. Those who acted first would obtain payment of the claim in

> preference to and to the detriment of other creditors. Bankruptcy is designed
> to provide an orderly liquidation procedure under which all creditors are
> treated equally. A race of diligence by creditors for the debtor's assets
> prevents that.

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd., (In re Timbers of Inwood Forest Assoc., Ltd.)*, 793 F.2d 1380,1409 (5th Cir. 1986), *on reh'g*, 808 F.2d 363 (5th Cir.1987) (en banc court reinstating panel opinion), *aff'd*, 484 U.S. 365 (1988).[10] *See also*, *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) ["The purposes of the bankruptcy stay under 11 U.S.C. § 362 are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse"] (*citing GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir.1985)).  These policies and goals illustrate that the automatic stay is a critical component of the bankruptcy system.

Entitlement to remedies by those protected constituencies for violation of the essential protections provided by the automatic stay goes to the heart of the bankruptcy process and should be safeguarded in a centralized forum.  A bankruptcy court is the best-equipped forum in which to evaluate the significance and impact of any alleged stay violation.  While the automatic stay arises statutorily rather than as an affirmative injunctive act in a specific case, "that does not mean that applying and enforcing the stay ... is a simple exercise where a bankruptcy judge's experience and training are not

---

[10]  Quoting H.R. Rep. No. 595, 95th Cong. 1st Sess. (1977), S.Rep. No. 989, 95th Cong. 2d Sess. 49 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5963, 6010 (capitalization altered).

required." *Merrill v. MBNA America Bank, N.A. (In re Merrill)*, 343 B.R. 1, 9 n.10 (Bankr. D. Me. 2006). A bankruptcy court has a unique and compelling interest in insuring obedience to the restrictions imposed by the automatic stay. Although Congress has seen fit to create a private cause of action for its occurrence, a stay violation is not just a private injury. It strikes at the entire bankruptcy system and all parties for whom it was designed. "Punishment [of a stay violation] is necessary not just to compensate a party, but to insure future compliance with the judicial system. An arbitrator cannot be allowed to take the role of protector of the judicial process when he or she is outside the system and is an alternative to the system." *Grant v. Cole (In re Grant)*, 281 B.R. 721, 725 (Bankr. S.D. Ala. 2000). Therefore, the Court concludes that the enforcement of the arbitration clause as against the Debtor's stay violation claim would inherently conflict with federal statutory policies undergirding the significance of the automatic stay to the bankruptcy system and the protection afforded to constituencies benefitted thereby. Accordingly, the Court will exercise its "significant discretion" to deny the Defendants' demand for arbitration and, to the extent they are based on such grounds, shall deny the Defendants' respective motions to dismiss, abstain or stay the continued prosecution of the complaint brought by the Debtor under §362(k).

*Dismissal Based upon Limitations.*

The Defendants further contend that the complaint should be dismissed under Rule 12(b)(6) because it is barred by limitations.  It is clear that the alleged violations took place in 2004 and 2008, and the complaint was not filed until April 2010.  The Bankruptcy Code does not specify a limitations period for §362(k) causes of action, *Climer v. U.S.*, 167 F.3d 537, 1998 WL 915374, at *2 (5th Cir., Dec. 21, 1998); *Koffman v. Osteoimplant Technology, Inc. (In re Maxim Truck Co., Inc.)*, 182 B.R. 115, 124 (D. Md. 1995), and courts have permitted debtors to bring such actions well after the underlying bankruptcy case has been closed or dismissed. *See, e.g., Johnson v. Smith (In re Johnson),* 575 F.3d 1079, 1083 (10th Cir. 2009); *Price v. Rochford*, 947 F.2d 829 (7th Cir.1991); *In re Bernheim Litigation*, 290 B.R. 249 (D.N.J.2003).

Yet the Defendants argue that when a federal statute lacks a limitations period, federal courts borrow state limitations periods governing "analogous" state causes of action.  They urge the Court to impose Texas' two-year statute of limitations for tort claims to the Plaintiffs' complaint under §362(k).  While it is true that federal courts on occasion look to state law of limitations when no such period is specified by a federal statute, such an approach is not mandated.  "While federal courts do at times borrow analogous state limitations periods, they also sometimes borrow analogous federal limitations periods, apply no limitation period, or apply the doctrine of laches." *In re Bernheim Litigation*, 290 B.R. at 258.[11]

---

[11]  The Defendants have not suggested the application of laches in this case.

-18-

The importation of a state statute of limitation is neither mindless nor mechanical. Neither the Supreme Court nor any circuit court has ever endorsed the importation of "analogous" state limitations periods with regard to statutory stay violation remedies arising from the Bankruptcy Code. Indeed, the Supreme Court has disapproved in other contexts the importation of state statutes of limitation, particularly brief ones, when such periods are inadequate to accomplish, and inconsistent with, the stated purposes of the federal legislation. *See, e.g., Felder v. Casey,* 487 U.S. 131, 139-140 (1988). As the Supreme Court has recognized, "State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." *Occidental Life Ins. Co. of California v. E.E.O.C.,* 432 U.S. 355, 367 (1977); *see also, Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2nd Cir. 1998).

The lack of a limitations period in §362(k) is not a deficiency in search of a remedy and the importation of a two-year statute of limitation for such claims would frustrate the goals for which §362(k) was enacted. Indeed, a torts limitation period, particularly one as brief as two years, is truly not analogous. While a tort and a stay violation are both wrongful acts, a stay violation arises from a violation of a federal court order. It encompasses more than a redress for a particular individual's injury. It constitutes a mechanism by which respect for, and compliance with, the bankruptcy system is enforced. As is widely recognized, that mechanism inures to the benefit of both

debtors and creditors.  The adoption of a two-year limitation period for these claims

would only serve one constituency – stay violators.  This is why courts, including the

Seventh Circuit in *Price v. Rochford*, refuse to restrict the prosecution of stay violations

even after the termination of the underlying bankruptcy case.  In the face of such

concerns, the Defendants have failed to offer any convincing reason for the application of

the Texas 2-year tort limitations period to §362(k) claims.  Therefore, the Court shall

reject the importation request and the Defendants' motions to dismiss based upon such

ground are denied.

*Dismissal of Non-Debtor Claims Based upon Standing.*

Finally, the Defendants seek the dismissal of the claims asserted in the Complaint

by the non-debtor spouse, Jacqueline Berry, for lack of standing.  It is uncontested that

Ms. Berry is neither a debtor or a creditor in this case.  The Plaintiffs contend that

standing is conferred upon Berry because she is "an individual injured by any willful

violation of a stay provided by this section" as outlined in the statute.  Though it dealt

with the right of a creditor to pursue a §362(k) claim, a recent Fifth Circuit case walks us

through the analytical framework necessary for this determination.  See, e.g., *St. Paul*

*Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533 (5th Cir. 2009).

"The inquiry as to whether a particular [litigant] has standing has two components,

involving both constitutional limitations on federal court jurisdiction and prudential

limitations on its exercise." *Association of Community Orgs. v. Fowler*, 178 F.3d 350,

356 (5th Cir. 1999) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  To establish

standing under Article III, §2 of the Constitution, Berry must initially show: (1) an injury

in fact; (2) that is fairly traceable to the challenged act; and (3) that is likely to be

redressed by the requested remedy. *See Davis v. East Baton Rouge Parish School Bd.*, 78

F.3d 920, 926 (5th Cir. 1996) (citations and internal quotations omitted).  That

constitutional requirement is met by Berry in this case.  Taking the allegations as true, her

injuries were suffered as a direct result of a stay violation by Green Tree or its agent.

Further, it is likely that such injuries could be redressed by the statutory remedy.  Thus,

the claim falls within the constitutional boundaries of Article III jurisdiction.

However, even in cases in which Article III jurisdiction exists, federal courts have

restricted the exercise of that jurisdiction based on certain prudential limitations.

"Numbered among these prudential requirements is the doctrine of particular concern in

this case:  that a plaintiff's grievance must arguably fall within the zone of interests

protected or regulated by the statutory provision ... invoked in the suit."  *Bennett v. Spear*,

520 U.S. 154, 162 (1997); *Labuzan*, 579 F.3d at 539.  With particular reference to

§362(k), the Circuit in *Labuzan* closely examined whether the use of such a broad term as

"individual" in the statute reflected a legislative intent that prudential limitations were to

be ignored for the purposes of a §362(k) standing analysis.  It concluded that it did not.

*Labuzan*, 579 F.3d at 540.  Therefore, a consideration of those judicially created limits is

appropriate.

While Berry is undoubtedly an "individual," there are serious doubts as to whether

her non-debtor grievance against the Defendants is one that falls "within the zone of interests" protected by §362(k).  As one court observed, a non-debtor can be an individual, "but the definition of 'individual' under 11 U.S.C. §362(h) [now §362(k)] does not necessarily include all parties who may have some tangential interest in Debtor's bankruptcy."  *Siskin v. Compete Aircraft Services, Inc. (In re Siskin)*, 231 B.R. 514 (Bankr. E.D.N.Y. 1999).  Clearly an individual who is a debtor in bankruptcy case is within that zone.  The Circuit in *Labuzan* concluded that a creditor of a bankruptcy estate also dwells within that zone since the automatic stay also provides creditor protections to ensure equal treatment and orderly liquidation proceedings.  *Id*.  However, a non-debtor spouse[12] "is not in the class of persons primarily intended to benefit from the automatic stay of §362."  *Newcomer v. Litton Loan Servicing, LP (In re Newcomer)*, 416 B.R. 166, 175 (Bankr. D. Md. 2009); *Siskin*, 231 B.R. at 519 ["The fact that Non-Debtor Plaintiff is Debtor's spouse does not necessarily provide such identity of interest that she falls within the ambit of Title 11"].  Berry's claim for injuries is independent of the Debtor's rights[13] and has no effect on the administration of the estate.  The recognition of her "private

---

[12]  Again, the issue as to whether Ms. Berry actually is the spouse of the Debtor remains undetermined, given the Debtor's failure to so list her in his original schedules and his references to his "girlfriend" in his original complaint in this action.  Despite the curious change in characterization in the Plaintiffs' First Amended Complaint, she is assumed to be his spouse for the purpose of determining the dismissal motions.

[13]  While any community property interest that Berry may have possessed in the property was undoubtedly included in the original scope of the property of the estate under §541(a)(2) and was therefore protected at one time by the automatic stay, that protection was not for her individual benefit and evaporated when the Debtor's exemption claim to the property was allowed — at a time long before her claim for injuries arose.

cause of action" under §362(k) does not advance any bankruptcy objective.  Thus, the
rationale that undergirded the recognition of creditor standing to pursue §362(k) claims in
*Labuzan* is notably absent here.  That explains why "courts have been reluctant to give
redress under §362 to third parties [i.e., non-debtors] other than pre-petition creditors."
*Siskin*, 231 B.R. at 518; *see also, Newcomer*, 416 B.R. at 175 ["Non-debtors are not
protected by the automatic stay of Section 362(a) of the Bankruptcy Code and, as a
consequence, have no standing whatsoever to raise the issue of its violation"]; and *In re
Prairie Trunk Rwy.*, 112 B.R. 924, 930 (Bankr. N.D. Ill. 1990) [finding that §362(h) [now
§362(k)] "was enacted to buttress that shield [of debtor protection] by creating a private
right of action for those intended beneficiaries of section 362(a) ...."].  This does not mean
that the Defendants have a safe harbor from liability for the injuries that they allegedly
caused to Berry.  It simply means that those claims cannot be remedied under §362(k).

The Court concludes that Berry's interest in seeking redress for her grievances are
not arguably within the zone of interests protected by §362(k) and therefore, as a non-
debtor, she does not have standing to pursue a stay violation remedy under §362(k).[14]
The Defendants' respective motions to dismiss shall therefore be granted as to the claims
asserted by the Plaintiff, Jacqueline Berry.

---

[14]  Because the non-debtor cannot meet the zone of interest test, the Court need not consider other
prudential limitations.  *See, e.g., Air Courier Conference of America v. American Postal Workers Union*,
498 U.S. 517 (1991).

## Conclusion

The Court therefore concludes that the "Motion to Dismiss the Plaintiff's (sic) First Amended Complaint Pursuant to Bankruptcy Rule 7012(b), Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 28 U.S.C. §1334(b), or Alternatively, Abstention in Favor of Arbitration Pursuant to 28 U.S.C. §1334(c)(1) or Alternatively, Stay Pending Arbitration Pursuant to 9 U.S.C. Sections 1-3" **[dkt #14]** filed by Defendant, Green Tree Servicing, LLC, and the "Defendant's First Amended Motion to Dismiss the Plaintiff's (sic)  First Amended Complaint Pursuant to Bankruptcy Rule 7012(b), Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 28 U.S.C. §1334(b), or Alternatively, Abstention in Favor of Arbitration Pursuant to 28 U.S.C. §1334(c)(1) or Alternatively, Stay Pending Arbitration Pursuant to 9 U.S.C. Sections 1-3" **[dkt #24]** filed by Defendant, John Patrick Herr, in this adversary proceeding are each granted as to the claims asserted by Plaintiff, Jacqueline Berry, and denied as to the claims asserted by Plaintiff, Ira Glen Rushing. Separate orders on the respective motions will be entered in a manner consistent with this opinion.

Signed on 10/06/2010

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE